1  DANIEL E. ALBERTI (68620)
   dalberti@mwe.com
2  McDERMOTT WILL & EMERY LLP
   3150 Porter Drive
3  Palo Alto, CA  94304-1212
   Telephone:     650.813.5000
4  Facsimile:     650.813.5100

5  PAUL E. CHRONIS
   pchronis@mwe.com
6  McDERMOTT WILL & EMERY LLP
   ARON J. FRAKES
7  ajfrakes@mwe.com
   227 West Monroe Street
8  Chicago, Illinois   60606
   Telephone:  312.372.2000
9  Facsimile:  312.984.7700

10  Attorneys for Plaintiff
    VESTA STRATEGIES, LLC
11

12              UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14

15  VESTA STRATEGIES, LLC,              CASE NO.  C 07-06216 JW RS

16              Plaintiff,              **SECOND AMENDED COMPLAINT**

17       v.

18  ROBERT E. ESTUPINIAN, GINNY
    ESTUPINIAN, MUTUAL VISION, LLC,
19  MILLENNIUM REALTY GROUP,
    VESTA REVERSE 100, LLC, VESTA
20  CAPITAL ADVISORS, LLC, CAROL-
    ANN TOGNAZZINI, EDMUNDO
21  ESTUPINIAN, and HAYDEE
    ESTUPINIAN,
22
                Defendants.
23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

### SECOND AMENDED COMPLAINT

Plaintiff, Vesta Strategies, LLC ("Vesta Strategies"), by its undersigned attorneys, states as follows for its Complaint against defendants, Robert E. Estupinian, Ginny Estupinian, Mutual Vision, LLC ("Mutual Vision"), Millennium Realty Group ("Millennium"), Vesta Reverse 100, LLC ("Vesta Reverse"), Vesta Capital Advisors, LLC ("Vesta Capital"), Carol-Ann Tognazzini ("Tognazzini"), Edmundo Estupinian, and Haydee Estupinian.

### NATURE OF THE ACTION

1.      Robert Estupinian was the CEO of Vesta Strategies.  Since Vesta Strategies' inception, Robert Estupinian, his wife Ginny Estupinian, and his private companies have systematically and habitually breached their fiduciary and other legal duties to Vesta Strategies by embezzling and stealing Vesta Strategies' money and causing Vesta Strategies millions of dollars of damages.  Robert Estupinian's wrongful and unlawful conduct included but was not limited to:

- He stole Vesta Strategies' money to finance his and his wife's lavish lifestyle and to fund his own personal business ventures.

- He stole Vesta Strategies' money to buy two dogs for $50,000.

- He stole Vesta Strategies' money to personally rent an over $3,000 per month luxury oceanfront vacation apartment for years.

- He stole Vesta Strategies' money to throw extravagant parties for his wife.

- He stole Vesta Strategies' money to buy properties in his and his wife's name and then, when the properties did not make as much money as he wanted, he deeded them to Vesta Strategies.

- He stole Vesta Strategies' money to pay for his tuition to go to school for his PhD.

- He stole Vesta Strategies' money to buy his personal house.

- He stole Vesta Strategies' money to give to his parents as part of one of their real estate deals.

- He stole Vesta Strategies' money to pay so-called "referral fees" to his other companies and to pay commissions owed by his other companies.

- He stole Vesta Strategies' money to pay purported Vesta Strategies employees who did no work for Vesta Strategies.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

2.      Vesta Strategies' 51% majority member and manager only recently learned about Robert Estupinian's embezzlement, misappropriation, and misuse of Vesta Strategies' money. That is because Robert Estupinian affirmatively and fraudulently hid what he was doing and directed other Vesta Strategies' employees to mislead Vesta Strategies' controlling member and manager, falsify records, and mischaracterize transactions to hide Robert Estupinian's theft.

3.      Vesta Strategies brings this action against Robert Estupinian, his wife, his parents, his other companies, and other individuals who have benefited from Robert Estupinian's theft and who have wrongfully and unjustly received Vesta Strategies' money. Vesta Strategies seeks to expeditiously recover the millions of dollars that have been wrongfully taken from it.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 18 U.S.C. § 1964.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) in that a substantial portion of the events giving rise to this action occurred in San Jose, Santa Clara County, California..

## JURY DEMAND

6.      Vesta Strategies demands a trial by jury.

## PARTIES

7.      Plaintiff Vesta Strategies is a California limited liability company. Vesta Strategies' offices are located at 150 Almaden Boulevard, Suite 1375, San Jose, California.

8.      Defendant Mutual Vision is a 49% minority member of Vesta Strategies. Upon information and belief, Mutual Vision's members are defendants Robert and Ginny Estupinian. Mutual Vision is located in Campbell, California.

9.      Defendant Robert Estupinian is the former CEO of Vesta Strategies. Robert Estupinian received an annual salary from Vesta Strategies of $250,000. Robert Estupinian has numerous degrees, including a BA (Bachelor of Arts), MBA (Masters of Business Administration), and JD (Juris Doctor). He also has numerous professional designations, including as a RFC (Registered Financial Consultant), GRI (Graduate Realtor Institute), and CRS

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

(Certified Residential Specialist).  Moreover, he holds numerous licenses, including a Real Estate broker license, an Insurance broker license, and a Registered Representative of Securities – Series 22, 6, 63 and Variable Contracts.  Robert Estupinian resides in San Jose, California.

10.     Defendant Ginny Estupinian is Robert Estupinian's wife.  Ginny Estupinian is a former employee of Vesta Strategies.  Despite performing little work for Vesta Strategies, Ginny Estupinian received an annual salary from Vesta Strategies of $96,000.  Upon information and belief, Ginny Estupinian has a Bachelors degree in Business Administration and is in the process of obtaining a PhD in psychology.  Ginny Estupinian resides in San Jose, California.

11.     Defendant Millennium is an investment property brokerage company that is, upon information and belief, owned and operated by Robert Estupinian.  Millennium is located in San Jose, California.

12.     Defendant Vesta Reverse is a limited liability company in which Mutual Vision is the majority member.  Vesta Reverse is operated by Robert Estupinian.  Vesta Reverse was used to funnel money out of Vesta Strategies for the personal benefit of Robert and Ginny Estupinian.  Vesta Reverse is located in San Jose, California.

13.     Defendant Vesta Capital is a limited liability company that is operated by Robert Estupinian.  Vesta Capital was used to funnel money out of Vesta Strategies to make investments to benefit Robert and Ginny Estupinian.  Vesta Capital is located in San Jose, California.

14.     Defendant Tognazzini is a close personal friend of Ginny Estupinian.  Tognazzini has been on Vesta Strategies' payroll since December, 2006 under Robert Estupinian's direction, but Tognazzini did not do any work for Vesta Strategies.  Instead, upon information and belief, she was on Vesta Strategies' payroll solely to allow her to state that she was employed and had income in order qualify for a loan to purchase a house.  Upon information and belief, Tognazzini resides in Rio Linda, California.

15.     Defendants Edmundo and Haydee Estupinian are Robert Estupinian's parents.  Robert Estupinian's parents wrongfully received and voluntarily accepted monies misappropriated from Vesta Strategies.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

## OPERATIVE FACTS APPLICABLE TO ALL COUNTS

16.    Vesta Strategies was formed on January 9, 2004.  Vesta Strategies is a qualified intermediary for Section 1031 tax-deferred real estate exchanges.  In essence, a qualified intermediary for Section 1031 exchanges works with persons owning investment properties to help them complete their Section 1031 exchange.  In performing its services, a qualified intermediary collects deposits from its customers and, at the appropriate time, has an obligation to pay those funds out to the customer.

17.    Mutual Vision has been the minority member of Vesta Strategies at all relevant times.  Robert Estupinian is the President of Mutual Vision.  He and his wife Ginny Estupinian are, upon information and belief, the only members of Mutual Vision.

### The Estupinians Funded Their Lavish Lifestyle from Vesta Strategies' Bank Account

18.    Robert Estupinian was the CEO of Vesta Strategies.  Instead of acting in Vesta Strategies' best interests, Robert Estupinian used and abused his position to fund his and his wife's extravagant lifestyle.  Indeed, Robert and Ginny Estupinian treated Vesta Strategies as their own personal bank account.

### Robert Estupinian Used Vesta Strategies Funds to Buy Two Dogs for $50,000.

19.    From August, 2006 through June, 2007, Robert Estupinian caused $170,000 to be transferred from Vesta Strategies to Mutual Vision (the minority member in Vesta Strategies).  He used the money in two ways.  He spent $50,000.00 on two dogs.  And he put $118,000 into his and his wife's personal bank account.

20.    Mutual Vision, Robert Estupinian, and Ginny Estupinian have never paid that $170,000 or any interest back to Vesta Strategies.

21.    Notwithstanding the fact that Vesta Strategies' manager and majority member did not know about it, did not approve it, and never would have approved it, Robert Estupinian bought dogs and took money for his own personal account.  The dogs and Robert Estupinian's bank account have no legitimate connection to Vesta Strategies' business.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**The Estupinians Used Vesta Strategies Funds to Buy Their House.**

22.    On June 7, 2004, Robert Estupinian took $1,256,150 out of Vesta Strategies.  One week later, on June 14, 2004, he used that money to buy his house, with cash at closing, for $1,295,000.  Amazingly, the Estupinians then used their personal company Millennium as their purported agent on the transaction and collected $38,850 as a commission for the transaction.  In other words, the Estupinians bought a $1.3 million house without paying a dime.  In fact, the Estupinians actually *made* money on their purchase of their million-dollar house.

23.    Mutual Vision, Robert Estupinian, and Ginny Estupinian have not paid all of this $1,256,150 back to Vesta Strategies and have not paid any interest on that money.

24.    Robert Estupinian affirmatively hid the purpose for which the $1,256,150 was being transferred out of Vesta Strategies.

25.    Notwithstanding the fact that Vesta Strategies' manager and majority member did not know about it, did not approve it, and never would have approved it, the Estupinians bought a house with Vesta Strategies' money.  The Estupinians' house has no legitimate connection to Vesta Strategies' business.

**The Estupinians Used Vesta Strategies Funds to Rent a Luxury Apartment.**

26.    Since 2004, the Estupinians have also rented a luxury, oceanfront apartment in Long Beach, California.  The rent for that luxury apartment has ranged from $3,050 to $3,379 per month.  Despite how expensive it is, Robert and Ginny Estupinian have, on information and belief, spent a maximum of several weeks per year at that apartment.  Vesta Strategies has paid for the rent, furniture, and utilities (including electricity, gas, water, satellite television, and cleaning services) for Robert and Ginny Estupinian's personal, luxury, beachfront apartment.  Specifically, Vesta Strategies has paid over $160,308 in rent, furnishings, and utilities for that apartment.

27.    Robert and Ginny Estupinian have never paid that money back to Vesta Strategies.

28.    The Estupinians lied to Vesta Strategies and its controlling member and manager about the purpose for this rent.  Indeed, Robert Estupinian submitted expense reports for

1   apartment expenses under the guise that they were for the "Long Beach Office," which did not

2   exist.

3       29.     Notwithstanding the fact that Vesta Strategies' manager and majority member did

4   not know about it, did not approve it, and never would have approved it, the Estupinians have

5   personally rented a luxury vacation apartment using Vesta Strategies' money.  The Estupinians'

6   luxury apartment has no legitimate connection to Vesta Strategies' business.

7               **Robert Estupinian Used Vesta Strategies Funds to Go to School.**

8       30.     From 2005 through 2007, Robert Estupinian has attended Walden University to

9   seek his PhD.  He used Vesta Strategies to pay his tuition and other costs.  Specifically, Vesta

10  Strategies has paid $42,795 for Robert Estupinian to go to Walden University.

11      31.     Robert Estupinian has never paid any of the money that he used for his school

12  tuition and costs back to Vesta Strategies.

13      32.     Notwithstanding the fact that Vesta Strategies' manager and majority member did

14  not know about it, did not approve it, and never would have approved it, Robert Estupinian went

15  to school on Vesta Strategies' money.  Robert Estupinian's schooling had no legitimate

16  connection to Vesta Strategies' business.

17           **The Estupinians Used Vesta Strategies Funds to Throw Extravagant Parties.**

18      33.     Robert Estupinian threw extravagant parties, including birthday parties for his

19  wife.  The Estupinian's invited their friends and family to the swanky Fairmont Sonoma Mission

20  Inn and Spa for the weekend.  The Estupinians would treat their friends to fancy lodging, dinners,

21  spa treatments, and other events.  The Estupinians and their friends would run up a tab of

22  thousands of dollars, which Robert Estupinian would pick up.  The reason that Robert Estupinian

23  was such a big spender is clear:  he was not spending his own money.  He was spending Vesta

24  Strategies' money.  Vesta Strategies paid for these lavish parties, to the tune of over $9,313.

25  Robert and Ginny Estupinian have never paid that money back to Vesta Strategies.

26      34.     Notwithstanding the fact that Vesta Strategies' manager and majority member did

27  not know about it, did not approve it, and never would have approved it, Robert Estupinian threw

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   personal parties using Vesta Strategies' money.  The Estupinian's personal parties with their

2   friends and family had no legitimate connection to Vesta Strategies' business.

3   **Robert Estupinian Used Vesta Strategies to Pay Sham Payroll to Ginny Estupinian's Friend**

4       35.    Instead of acting in Vesta Strategies' best interests, Robert Estupinian used and

5   abused his position to pay money to his wife's friend with no return benefit to Vesta Strategies.

6   This particular scam involved the Estupinians' efforts to help their friend trick lenders into

7   believing that she had an employment history and income so that she could get a loan.

8       36.    On December 21, 2006, Robert Estupinian put Tognazzini (Ginny Estupinian's

9   friend) on Vesta Strategies' payroll.  Tognazzini was paid an annual salary of $36,480.  However,

10  Vesta Strategies is not aware of *any* work that Tognazzini did for Vesta Strategies.  To the extent

11  that she did anything for Vesta Strategies, it certainly did not justify her salary.

12      37.    Upon information and belief, prior to her purported employment with Vesta

13  Strategies, Tognazzini was unemployed.

14      38.    Upon information and belief, Tognazzini has been in the market to purchase a

15  house.  If she was unemployed, and did not have any income, then Tognazzini would not have

16  qualified for a loan to purchase a house.  Upon information and belief, Robert Estupinian put

17  Tognazzini on the Vesta Strategies payroll and paid her income solely so that Tognazzini could

18  show lenders that she was employed and qualify for a loan.

19      39.    Tognazzini's alleged employment with Vesta Strategies was nothing more than a

20  sham to trick mortgage companies into believing that she was employed and had a steady stream

21  of income.

22      40.    In addition to helping their friend defraud banks, the Estupinians also had a selfish

23  interest in Tognazzini qualifying for a mortgage to purchase a house.  Indeed, upon information

24  and belief, the Estupinians expected to serve as agents or brokers for Tognazzini's home purchase

25  and to pocket a significant commission as a result.

26      41.    Notwithstanding the fact that Vesta Strategies' manager and majority member did

27  not know about it, did not approve it, and never would have approved it, Robert Estupinian

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1  caused Vesta Strategies to pay a significant salary to a person who did no work for Vesta

2  Strategies.

3      **Robert Estupinian Paid Other People from Vesta Strategies for Non-Vesta Work**

4      42.    Instead of acting in Vesta Strategies' best interests, Robert Estupinian used and

5  abused his position to pay substantial amounts of money to individuals who were not doing

6  significant work for Vesta Strategies.

7      43.    For example, Bill Kraft, Brad Hensley, and David Carter worked directly for

8  Robert Estuinian or for one of Estupinian's other companies, including Millennium.  In that

9  capacity, those individuals performed real estate sales and broker services.

10     44.    Vesta Strategies is a company that acts as a qualified intermediary for Section

11 1031 real estate exchanges.

12     45.    Bill Kraft, Brad Hensley, and David Carter have spent the vast majority of their

13 time assisting Robert Estupinian with his business of selling tenant in common interests in real

14 estate, rather than working for Vesta Strategies in its qualified intermediary business.

15     46.    However, despite the fact that they spent the majority of their time doing business

16 other than Vesta Strategies business, Robert Estupinian used Vesta Strategies to pay Bill Kraft,

17 Brad Hensley, and David Carter.  At Robert Estupinian's direction, Vesta Strategies paid

18 significant wages to those individuals, when those wages should have been paid by Robert

19 Estupinian's other companies.

20     47.    Notwithstanding the fact that Vesta Strategies' manager and majority member did

21 not know about it, did not approve it, and never would have approved it, Robert Estupinian

22 Robert Estupinian used Vesta Strategies to make payroll payments to individuals who were in

23 reality working directly for him or his other companies and who were not performing significant

24 services for Vesta Strategies.

25     **Robert Estupinian Used Vesta Strategies to Further His Wife's Education and Career**

26     48.    Instead of acting in Vesta Strategies' best interests, Robert Estupinian used and

27 abused his position to cause Vesta Strategies to pay money to support Ginny Estupinian's

28 psychology education and career.

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1    49.    For example, at Robert Estupinian's direction, the so-called Vesta Strategies

2    Foundation made a $6,000 grant to a psychology research group in order to conduct a certain

3    psychology study.  That grant was made using Vesta Strategies' money.  Ginny Estupinian served

4    as the project coordinator for that study.

5    50.    Notwithstanding the fact that Vesta Strategies' manager and majority member did

6    not know about it, did not approve it, and never would have approved it, Robert Estupinian

7    funded a psychology study.  That psychology study had no relation to, and provided no benefit to,

8    Vesta Strategies' real estate business.

9    **Robert Estupinian Used Vesta Strategies to Pay Obligations of His Personal Companies**

10   51.    Instead of acting in Vesta Strategies' best interests, Robert Estupinian used and

11   abused his position to cause Vesta Strategies to pay obligations owed by Millennium, not Vesta

12   Strategies.

13   52.    Robert Estupinian owned and operated Millennium, a company that performs real

14   estate brokerage and investments services.  Unlike Vesta Strategies, Millennium is not a Section

15   1031 qualified intermediary.

16   53.    Robert Estupinian used Vesta Strategies funds to pay the commissions that

17   Millennium owed to its sales people.  Specifically, Robert Estupinian caused Vesta Strategies to

18   pay at least the following commissions that Millennium was obligated to pay:

19   (1) $14,000 on March 15, 2005 for a Real Estate Commission; (2) $16,000 on December 15, 2006

20   for a Securities Commission; (3) $14,160 on December 15, 2006 for a Securities Commission; (4)

21   $5,000 on June 15, 2007 for a Real Estate Commission; (5) $5,000 on July 15, 2007 for a Real

22   Estate Commission; (6) $5,000 on August 15, 2007 for a Real Estate Commission; and (7) $5,000

23   on August 15, 2007 for a Securities Commission.  Therefore, at Robert Estupinian's direction,

24   Vesta Strategies is out $64,160 for commissions that had nothing to do with Vesta Strategies.

25   Meanwhile, Robert Estupinian's other company, Millennium, kept 100% of the commission that

26   it collected for the transactions.

27   54.    Vesta Strategies did not owe Millennium's commissions and those commissions

28   should not have been paid by Vesta Strategies.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

55.    Millennium and Robert Estupinian have never paid any money back to Vesta Strategies that was paid by Vesta Strategies for commissions owed by Millennium or Robert Estupinian.

56.    Notwithstanding the fact that Vesta Strategies' manager and majority member did not know about it, did not approve it, and never would have approved it, Robert Estupinian paid the debts of his personal companies using Vesta Strategies funds.  Those payments had no legitimate connection to Vesta Strategies' business.

**Robert Estupinian Caused Vesta Strategies to Pay Phony Fees to His Other Companies**

57.    Instead of acting in Vesta Strategies' best interests, Robert Estupinian used and abused his position to cause Vesta Strategies to pay phony "referral fees" to his other companies.

58.    Indeed, at Robert Estupinian's direction, Vesta Strategies has paid $630,100 in so-called referral fees to Millennium.  However, Millennium did not refer anything to Vesta Strategies or perform any other services to earn that $630,100.  The referral fees were phony. They were simply a disguise to shuttle money from Vesta Strategies to Millennium at Robert Estupinian's whim.

59.    Robert Estupinian and Millennium were not entitled to the $630,100 paid to them by Vesta Strategies.  However, they have never returned that money to Vesta Strategies.

60.    Robert Estupinian hid these phony referral fees by falsifying financial records to show income that did not exist to cover these expenses.

61.    Notwithstanding the fact that Vesta Strategies' manager and majority member did not know about it, did not approve it, and never would have approved it, Robert Estupinian paid referral fees to Millennium that Vesta Strategies did not owe.  Those payments had no legitimate connection to Vesta Strategies' business.

**Robert Estupinian Used Vesta Strategies' Money to Make His Own Investments**

62.    Instead of acting in Vesta Strategies' best interests, Robert Estupinian used and abused his position to use Vesta Strategies' money to make his own personal investments, investments for his family, and investments for his other business.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**The Estupinians Buy Personal Real Estate Investments with Vesta Strategies Funds.**

63.    Vesta Reverse 100, LLC (a company set up by Robert Estupinian) borrowed $750,000 from Vesta Strategies.  Robert Estupinian used that money to purchase vacant lots in South Carolina (Lots 683, 687, 688).  However, he did not purchase those lots for Vesta Strategies.  Indeed, Vesta Strategies is a Section 1031 exchange business, it is not a real estate investment business.  Rather, he purchased them for himself and his wife.

64.    Specifically, the Settlement Statements confirm that Robert and Ginny Estupinian personally purchased Lots 683, 687, and 688 for $230,000, $260,000, and $260,000, respectively, on or about September 20, 2005.

65.    Ultimately, when that speculative investment apparently did not work out as he had hoped, Robert Estupinian then transferred the deeds of the properties to Vesta Strategies. Simply put, Robert Estupinian and Ginny Estupinian used Vesta Strategies to fund their speculative real estate investment and then, when they did not make the Estupinians as much money as they hoped, dumped the properties on Vesta Strategies to deal with.

**Robert Estupinian Gave Vesta Strategies Funds to His Parents.**

66.    On October 4, 2007, Mutual Vision (Vesta Strategies' minority member) transferred $43,369.30 to a title company for a transaction involving Robert Estupinian's parents, Edmundo and Haydee Estupinian.  Upon information and belief, Mutual Vision's sole or primary source of revenue is Vesta Strategies.  Based on that fact, and on Mutual Vision's and the Estupinians' pattern of using Vesta Strategies' money to pay for things, Vesta Strategies believes that the $43,369.30 is Vesta Strategies funds.

67.    Robert Estupinian's parents had nothing to do with Vesta Strategies, and certainly did not provide any benefit to Vesta Strategies.  Yet, upon information and belief, Robert Estupinian caused Vesta Strategies to give them $43,369.30.  Edmundo and Haydee Estupinian kept that benefit.

MᶜDᴇʀᴍᴏᴛᴛ Wɪʟʟ & Eᴍᴇʀʏ LLP
Aᴛᴛᴏʀɴᴇʏs Aᴛ Lᴀw
Pᴀʟᴏ Aʟᴛᴏ

**Robert Estupinian Used Vesta Strategies Funds to Make High-Risk Mezzanine Loans.**

68.    Since its formation, through his personal companies, Robert Estupinian has also borrowed over $12 million from Vesta Strategies.  Robert Estupinian used Vesta Strategies' money to make his own investments or investments for his other companies.

69.    This was the scam:  Robert Estupinian "borrows" money from Vesta Strategies at a low interest rate.  He then puts that money into an investment yielding a higher rate of return – typically high-risk mezzanine financing at over 10% interest – on his own behalf (or using one of his other companies).  He then pays the principal back to Vesta Strategies, and pockets the substantial interest spread.  So Robert Estupinian gets all of the benefit of the money (the interest), while bearing none of the risk because he is using Vesta Strategies' money.

70.    Upon information and belief, Robert Estupinian has wrongfully and improperly received approximately $250,000 to $300,000 in interest per year for at least three years using Vesta Strategies' money.  Vesta Strategies was entitled to the use of its money, and the time value of that money, during that period of time.

**Robert Estupinian Submitted Improper Expense Reports to Vesta Strategies**

71.    Instead of acting in Vesta Strategies' best interests, Robert Estupinian used and abused his position to submit and collect upon improper expense reports to Vesta Strategies.  He expensed costs that had nothing whatsoever to do with Vesta Strategies' business, but rather were Robert Estupinian's personal costs or costs incurred in operating his other businesses.

72.    The following are just a few among many egregious examples of improper items that Robert Estupinian expensed through Vesta Strategies:

- Materials for a "Life Marketing Package" that had nothing whatsoever to do with Vesta Strategies' business;

- A subscription to Rob Minton's Monthly Income for Life newsletters, which was wholly unrelated to Vesta Strategies' business;

- Materials to develop a membership style website that was wholly unrelated to Vesta Strategies' business;

- Marketing expenses that had nothing whatsoever to do with Vesta Strategies' business;

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

- Real estate and securities memberships that had nothing whatsoever to do with Vesta Strategies' business;

- Subscriptions to entrepreneurial organizations that had nothing to do with Vesta Strategies' business; and

- Personal meetings and dinners, including frequent dinners with his wife and dinners or meetings that did not occur at all.

73.    Robert Estupinian collected improper expense payments from Vesta Strategies in an amount exceeding $432,776.

74.    Robert Estupinian affirmatively hid the true nature of these expenses in his expense reports, including for example by submitting expense reports for dinners with his wife using her maiden name (Hillig) rather than her married name (Estupinian).

### Robert Estupinian Tampered with Vesta Strategies' Computers and Wrongfully Took Vesta Strategies' Computer Hard Drives

75.    On Monday, December 3, 2007, Vesta Strategies met with Robert Estupinian and advised him that Vesta Strategies had prepared this lawsuit against him.

76.    The next day, Robert Estupinian returned two of Vesta Strategies' desktop computers to Vesta Strategies.  However, before returning those computers, Robert Estupinian, Ginny Estupinian, or someone acting on their behalf replaced the computers' hard drives and operating systems.  The returned computers therefore had no files or data on them.  In other words, they had been wiped clean.  Robert and Ginny Estupinian therefore tampered with Vesta Strategies' computers before returning them and kept possession of the two hard drives that had Vesta Strategies' files and data on them.  Those hard drives and all of the files and data on them are Vesta Strategies' property.

77.    Vesta Strategies promptly demanded that Robert Ginny Estupinian return all of Vesta Strategies' property to Vesta Strategies, including the two hard drives and all of the money misappropriated from Vesta Strategies.  Vesta Strategies also reminded Robert Estupinian and his attorney of Robert Estupinian's legal duty not to destroy, conceal, or in any way alter any paper, electronic files, or other electronic data, including the data on the two hard drives.

78.    Despite Vesta Strategies' repeated demands, Robert and Ginny Estupinian have not returned to Vesta Strategies the two hard drives that were removed from Vesta Strategies'

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1   computers or any of the funds that were misappropriated.  To the contrary, Robert Estupinian and

2   his attorney have threatened to make their own copy of those hard drives and to redact data from

3   those hard drives before returning them to Vesta Strategies.

### COUNT I – RICO UNDER 18 U.S.C. § 1962(c)
### Against Robert Estupinian and Ginny Estupinian

4

5       79.     Vesta Strategies incorporates the allegations of paragraphs 1 through 78 above as

6   if fully set forth in this paragraph.

7       80.     This cause of action is brought under RICO Section 1962(c).  RICO Section

8   1962(c) prohibits a person from managing or operating an enterprise through a pattern of

9   racketeering activity (such as mail fraud, wire fraud, bank fraud, interstate transportation of stolen

10  property, etc.).

11      81.     Mutual Vision is an "enterprise" as that term is defined in 18 U.S.C. § 1961(4).

12  Mutual Vision was engaged in interstate commerce and its activities affected interstate commerce

13  at all relevant times.

14      82.     Robert Estupinian and Ginny Estupinian are "persons" as that term is defined in 18

15  U.S.C. § 1961(3) and were members of, employed by, and/or associated with Mutual Vision at all

16  relevant times.  As its members and officers, Robert and Ginny Estupinian operate or manage

17  Mutual Vision.

18      83.     Over the course of several years, from 2004 through 2007, Robert and Ginny

19  Estupinian agreed to and did conduct and participate, directly or indirectly, in the conduct of

20  Mutual Vision's affairs through a continuous pattern of racketeering activity.  That pattern of

21  racketeering activity included wire fraud, bank fraud, and transportation of stolen property in

22  interstate commerce.  Through that pattern of racketeering activity, Robert Estupinian and Ginny

23  Estupinian executed and covered up a scheme to defraud Vesta Strategies.  The affairs of Mutual

24  Vision, as conducted and participated in by Robert and Ginny Estupinian, constitute a "pattern of

25  racketeering activity" as that phrase is used in 18 U.S.C. § 1962(c).

26      84.     In furtherance of their scheme and artifice to defraud Mutual Vision, Robert

27  Estupinian, and Ginny Estupinian transported (or caused to be transported) in interstate commerce

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

property that they knew was stolen or obtained by fraud. Specifically, the Vesta Strategies funds that Robert and Ginny Estupinian (through Mutual Vision) stole or fraudulently obtained were sent across state lines from one bank to another. For example:

- On September 13, 2005, in three separate transactions, Robert and Ginny Estupinian used over $700,000 of money that was stolen or fraudulently obtained from Vesta Strategies to purchase three lots in South Carolina. The place of settlement for those purchases was in Bluffton, South Carolina, but the money used for the purchase came from California.

- On August 7, 2006 and August 21, 2006, $27,760 and $22,458 (respectively) of money that was stolen or fraudulently obtained from Vesta Strategies was wired from Mutual Vision's account at the San Jose National Bank in San Jose, California to Wachovia Bank of South Carolina in Aiken, South Carolina.

The transportation of stolen or fraudulently obtained funds in interstate commerce constitutes predicate acts pursuant to 18 U.S.C. § 2314.

85.    In furtherance of their scheme and artifice to defraud, Mutual Vision, Robert Estupinian, and Ginny Estupinian electronically wired money across state lines (including but not limited to the wires listed in the preceding paragraph). In addition, the Estupinians caused e-mails to be sent from California to Illinois in order to further and cover up their scheme to defraud, including a June 7, 2004 e-mail to the office of the manager and majority member falsely stating where the $1,256,150 that the Estupinians used to buy their house was being transferred to. These wires constitute predicate acts of wire fraud pursuant to 18 U.S.C. § 1343.

86.    In furtherance of their scheme and artifice to defraud, Mutual Vision, Robert Estupinian, and Ginny Estupinian have also engaged in bank fraud. Specifically, Robert and Ginny Estupinian used Mutual Vision's minority membership in Vesta Strategies and Robert Estupinian's resulting position as CEO of Vesta Strategies to pay Tognazzini a salary from Vesta Strategies even though she did not perform any work for Vesta Strategies. The purpose of paying Tognazzini this unearned salary for a one year period of time was, upon information and belief, so that Tognazzini could claim to be employed and to have an income when she applied for mortgage loans. In addition, as alleged above, Robert and Ginny Estupinian used Mutual Vision to obtain Vesta Strategies' moneys and funds through false and fraudulent pretenses or

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1   representations.  Vesta Strategies' moneys and funds were under the custody or control of a

2   financial institution at the time that they were wrongfully obtained.  These acts of bank fraud

3   constitute predicate acts pursuant to 18 U.S.C. § 1344.

4       87.    Robert and Ginny Estupinian's violations of 18 U.S.C. § 1962 have directly and

5   proximately caused Vesta Strategies damages in its business and property.

6       WHEREFORE, Vesta Strategies respectfully requests that this Court enter judgment on

7   Count I in its favor and against Robert Estupinian and Ginny Estupinian, and award Vesta

8   Strategies the following relief:

9       (1)    money damages in the amount proximately caused by Robert
               Estupinian and Ginny Estupinian's RICO violations;

10

11      (2)    treble damages pursuant to 18 U.S.C. § 1964(c);

12      (3)    reasonable attorneys' fees and costs; and

13      (4)    such further or different relief as this Court deems appropriate.

### COUNT II – RICO CONSPIRACY UNDER 18 U.S.C. § 1962(d)
#### Against Robert Estupinian, Ginny Estupinian,
#### Mutual Vision, Millennium, Tognazzini, Vesta Reverse, and Vesta Capital

15

16      88.    Vesta Strategies incorporates the allegations of paragraphs 1 through 87 above as

17  if fully set forth in this paragraph.

18      89.    This cause of action is brought under RICO Section 1962(d).  A RICO Section

19  1962(c) claim is broad, but a RICO conspiracy claim under Section 1962(d) is even broader.

20  Anyone who agrees or conspires to pursue the same criminal objective can be held liable for a

21  RICO violation under Section 1962(d).

22      90.    At least Robert Estupinian, Ginny Estupinian, Mutual Vision, Millennium,

23  Tognazzini, Vesta Reverse, and Vesta Capital agreed and conspired to violate 18 U.S.C. §

24  1962(c).  In addition, Vesta Strategies continues to investigate whether other individuals

25  participated in the RICO conspiracy.

26      91.    Each of the conspirators agreed to conduct and participate in, or to knowingly

27  facilitate operation or management of, Mutual Vision's affairs as part of a scheme or artifice to

McDermott Will & Emery LLP
ATTORNEYS AT LAW
PALO ALTO

1    defraud Vesta Strategies. Each of the conspirators knew that the predicate acts described above

2    would be used in furtherance of their scheme or artifice to defraud.

3    92.    The conspirators' violations of 18 U.S.C. § 1962(d) have directly and proximately

4    caused Vesta Strategies damages in its business and property.

5    WHEREFORE, Vesta Strategies respectfully requests that this Court enter judgment on

6    Count II in its favor and against Robert Estupinian, Ginny Estupinian, Mutual Vision,

7    Millennium, Tognazzini, Vesta Reverse, and Vesta Capital, and award Vesta Strategies the

8    following relief:

9    (1)    money damages in the amount proximately caused by the RICO
        conspirators;
10

11   (2)    treble damages pursuant to 18 U.S.C. § 1964(c);

12   (3)    reasonable attorneys' fees and costs; and

13   (4)    such further or different relief as this Court deems appropriate.

14   **COUNT III – INJUNCTIVE RELIEF**
     **Against Robert Estupinian, Ginny Estupinian, and Mutual Vision**

15   93.    Vesta Strategies incorporates the allegations of paragraphs 1 through 92 above as

16   if fully set forth in this paragraph.

17   94.    Vesta Strategies has suffered and will continue to suffer irreparable injury as a

18   result of Defendants' wrongful conduct, unless the Defendants are enjoined and the assets of at

19   least Robert Estupinian, Ginny Estupinian, and Mutual Vision are frozen pending final resolution

20   of this matter. That irreparable harm is continuing.

21   95.    Vesta Strategies does not have an adequate remedy at law for Defendants'

22   wrongful conduct.

23   96.    Vesta Strategies has a clear legal right to relief and a substantial likelihood of

24   success on the merits because the Defendants have repeatedly and blatantly violated their

25   fiduciary and other legal duties to Vesta Strategies.

26   97.    The significant and irreparable harm to Vesta Strategies should an injunction not

27   issue outweighs any possible harm to the Defendants should an injunction be issued.

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

98.    The granting of the injunctive relief sought by Vesta Strategies will serve, not disserve, the public interest.

WHEREFORE, Vesta Strategies respectfully requests that this Court enter judgment on Count III in its favor and against Robert Estupinian, Ginny Estupinian, and Mutual Vision, and award Vesta Strategies the following relief:

(1)    Enter a preliminary and permanent injunction freezing the assets of Robert Estupinian, Ginny Estupinian, and Mutual Vision;

(2)    reasonable attorneys' fees and costs; and

(3)    such further or different relief as this Court deems appropriate.

## COUNT IV – CONVERSION
### Against Robert Estupinian, Ginny Estupinian,
### Mutual Vision, Millennium, Vesta Reverse, and Vesta Capital

99.    Vesta Strategies incorporates the allegations of paragraphs 1 through 98 above as if fully set forth in this paragraph.

100.    As alleged above, Robert Estupinian, Ginny Estupinian, Mutual Vision, Millennium, Vesta Reverse, and Vesta Capital misappropriated substantial monies from Vesta Strategies.

101.    Vesta Strategies was the rightful owner, and had the right to immediate possession, of its funds.

102.    Robert Estupinian, Ginny Estupinian, Mutual Vision, Millennium, Vesta Reverse, and Vesta Capital were not authorized to misappropriate and steal Vesta Strategies funds.  By taking or accepting Vesta Strategies' funds without authorization, Robert Estupinian, Ginny Estupinian, Mutual Vision, Millennium, Vesta Reverse, and Vesta Capital wrongfully exercised dominion or control over Vesta Strategies' personal property.

103.    Vesta Strategies has demanded that Robert Estupinian, Ginny Estupinian, Mutual Vision, Millennium, Vesta Reverse, and Vesta Capital immediately return the converted property. However, those defendants have refused to return the converted property and have not in fact returned that property to Vesta Strategies.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    104.    Robert and Ginny Estupinian have tampered with Vesta Strategies' computers and

2    wrongfully taken two computer hard drives, and all of the data on those hard drives, from Vesta

3    Strategies.

4    105.    Vesta Strategies was the rightful owner, and had the right to immediate possession,

5    of its computer hard drives and data.

6    106.    Robert and Ginny Estupinian were not authorized to take Vesta Strategies'

7    computer hard drives and data.  By taking Vesta Strategies' computer hard drives and data

8    without authorization, Robert and Ginny Estupinian wrongfully exercised dominion or control

9    over Vesta Strategies' property.

10    107.    Vesta Strategies has demanded that Robert and Ginny Estupinian immediately

11    return the converted computer hard drives and data.  However, Robert and Ginny Estupinian have

12    not returned that property to Vesta Strategies.  Instead, they have threatened to copy and redact

13    Vesta Strategies' computer hard drives before agreeing to return them to Vesta Strategies.

14    108.    The conversion of Vesta Strategies' personal property has directly and proximately

15    resulted in substantial damages to Vesta Strategies.

16    WHEREFORE, Vesta Strategies respectfully requests that this Court enter judgment on

17    Count IV in its favor and against Robert Estupinian, Ginny Estupinian, Mutual Vision,

18    Millennium, Vesta Reverse, and Vesta Capital and award Vesta Strategies the following relief:

19    (1)    money damages in the amount converted by Robert Estupinian,
20          Ginny Estupinian, Mutual Vision, Millennium, Vesta Reverse, and
          Vesta Capital;

21    (2)    money damages in an amount to be determined at trial for any
22          damages proximately caused by Robert and Ginny Estupinian's
          tampering with Vesta Strategies' computers and conversion of Vesta
23          Strategies' computer hard drives and data;

24    (3)    punitive damages;

25    (4)    reasonable attorneys' fees and costs; and

26    (5)    such further or different relief as this Court deems appropriate.

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

## COUNT V – BREACH OF FIDUCIARY DUTY
### Against Robert Estupinian, Ginny Estupinian, and Mutual Vision

109.    Vesta Strategies incorporates the allegations of paragraphs 1 through 108 above as if fully set forth in this paragraph.

110.    As the CEO of Vesta Strategies, Robert Estupinian owed fiduciary duties to Vesta Strategies and its majority member.  Robert Estupinian's fiduciary duties included, but were not limited to:  the duty not to exploit his position with Vesta Strategies for his own personal benefit; the duty to protect Vesta Strategies' and its depositors money; the duty to use Vesta Strategies' money for true Vesta Strategies business; the duty of candor with respect to what Vesta Strategies' money was being spent for; a duty to provide a complete, timely, and detailed accounting to Vesta Strategies of the uses and disposition of Vesta Strategies' money; and the duty to otherwise deal fairly with Vesta Strategies and act in Vesta Strategies' best interests.

111.    As alleged above, Robert Estupinian actively exploited his fiduciary position within Vesta Strategies to advance his personal interests at Vesta Strategies' direct expense.  For example, Robert Estupinian breached his fiduciary duties through, among other ways, any or all of the following actions:

A.    Using Vesta Strategies' money to finance his lavish and extravagant lifestyle;

B.    Using Vesta Strategies' money to pay Robert and Ginny Estupinian's friends and family members money that they did not earn;

C.    Using Vesta Strategies' money to pay for psychological studies to aid Ginny Estupinian's career;

D.    Using Vesta Strategies' money to pay obligations of Robert Estupinian's other companies;

E.    Using Vesta Strategies' money to pay phony referral fees to Millennium;

F.    Using Vesta Strategies' money to make investments on his own behalf;

G.    Submitting and collecting upon expense reports for expenses incurred for non-Vesta Strategies business; and

H.    Continuing to accept a salary from Vesta Strategies during times when he was no longer acting in the best interests of Vesta

Strategies.

112.    As an employee of Vesta Strategies, who along with her husband the CEO participated in managing Vesta Strategies' affairs, Ginny Estupinian owed fiduciary duties to Vesta Strategies not to take active steps to harm Vesta Strategies.

113.    Ginny Estupinian actively harmed Vesta Strategies.  For example, Ginny Estupinian breached her fiduciary duties to Vesta Strategies through, among other ways, any or all of the following actions:

A.    Using Vesta Strategies' money to finance her lavish and extravagant lifestyle;

B.    Accepting payroll payments that she had not earned because she was not performing any significant work for Vesta Strategies; and

C.    Participating in her husband's numerous breaches of his fiduciary duties, as alleged above.

114.    Robert and Ginny Estupinian's numerous breaches of their fiduciary duties has directly and proximately caused millions of dollars of damages to Vesta Strategies.

115.    Mutual Vision has at all relevant times been the minority member of Vesta Strategies.  As a member, whose member was the CEO of Vesta Strategies, Mutual Vision owed fiduciary duties to Vesta Strategies and its other member.

116.    Mutual Vision breached its fiduciary duties to Vesta Strategies through, among other ways, wrongfully taking money out of Vesta Strategies.

117.    Mutual Vision's numerous breaches of its fiduciary duties has directly and proximately caused millions of dollars of damages to Vesta Strategies.

WHEREFORE, Vesta Strategies respectfully requests that this Court enter judgment on Count V in its favor and against Robert Estupinian, Ginny Estupinian, and Mutual Vision, and award Vesta Strategies the following relief:

(1)    money damages in the amount proximately caused by Robert Estupinian, Ginny Estupinian, and Mutual Vision;

(2)    punitive damages;

(3)    reasonable attorneys' fees and costs; and

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

---

(4)    such further or different relief as this Court deems appropriate.

## COUNT VI – FRAUD
### Against Robert Estupinian, Ginny Estupinian, and Mutual Vision

118.    Vesta Strategies incorporates the allegations of paragraphs 1 through 117 above as if fully set forth in this paragraph.

119.    As part of their scheme to defraud Vesta Strategies, Robert Estupinian, Ginny Estupinian, and Mutual Vision knowingly made, participated in the making of, or ratified false and fraudulent statements of material fact and/or misleadingly failed to disclose material facts to Vesta Strategies.

120.    Robert Estupinian, Ginny Estupinian, and Mutual Vision intended for Vesta Strategies to rely on its misrepresentations and misleading omissions.  Vesta Strategies was deceived by these defendants' misrepresentations and reasonably relied upon the misrepresentations and fraudulent omissions.  Indeed, Vesta Strategies would not have authorized the improper misappropriation of its money if it had known the truth.  Nor would Vesta Strategies have continued to allow Robert Estupinian to be the CEO of Vesta Strategies, Ginny Estupinian to be an alleged employee of Vesta Strategies, or Mutual Vision to be Vesta Strategies' minority member.  Because Vesta Strategies would not have acted the way it did had it known the true facts, the misrepresentations and fraudulent omissions of Robert Estupinian, Ginny Estupinian, and Mutual Vision were material.

121.    Vesta Strategies suffered substantial damages as a direct and proximate result of its reliance on the false statements and fraudulent omissions of Robert Estupinian, Ginny Estupinian, and Mutual Vision, including but not limited to, the loss of millions of dollars that was obtained by these defendants and their friends and family through false pretenses.

122.    Robert Estupinian, Ginny Estupinian, and Mutual Vision conducted themselves in an outrageous manner by engaging in grossly deceptive business practices with reckless indifference to Vesta Strategies' rights.

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

WHEREFORE, Vesta Strategies respectfully requests that this Court enter judgment on Count VI in its favor and against Robert Estupinian, Ginny Estupinian, and Mutual Vision, and award Vesta Strategies the following relief:

(1)    money damages in the amount proximately caused by Robert Estupinian, Ginny Estupinian, and Mutual Vision;

(2)    punitive damages;

(3)    reasonable attorneys' fees and costs; and

(4)    such further or different relief as this Court deems appropriate.

**COUNT VII – CIVIL CONSPIRACY**
**Against Robert Estupinian, Ginny Estupinian,**
**Mutual Vision, Millennium, Tognazzini, Vesta Reverse, and Vesta Capital**

123.    Vesta Strategies incorporates the allegations of paragraphs 1 through 122 above as if fully set forth in this paragraph.

124.    Robert Estupinian, Ginny Estupinian, Mutual Vision, Millennium, Tognazzini, Vesta Reverse, and Vesta Capital agreed to participate in a venture that would wrongfully misappropriate funds from Vesta Strategies.

125.    Pursuant to their agreement, these defendants intentionally acted in concert to breach their respective fiduciary and other legal duties to Vesta Strategies and to cause Vesta Strategies injury.  Robert Estupinian, Ginny Estupinian, and Mutual Vision all took affirmative actions in furtherance of their agreement by, without limitation, withdrawing money from Vesta Strategies for the benefit of Robert Estupinian, Ginny Estupinian, Mutual Vision, Millennium, Tognazzini, Vesta Reverse, and Vesta Capital.

126.    Therefore, Robert Estupinian, Ginny Estupinian, Mutual Vision, Millennium, Tognazzini, Vesta Reverse, and Vesta Capital conspired to tortiously misappropriate Vesta Strategies' money and use it for their own purposes

127.    Accordingly, these defendants are jointly liable as conspirators for any tortious conduct committed in furtherance of their conspiracy.

128.    The tortious conduct of these defendants, committed in furtherance of their conspiracy, directly and proximately caused substantial damages to Vesta Strategies.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

WHEREFORE, Vesta Strategies respectfully requests that this Court enter judgment on Count VII in their favor and against Robert Estupinian, Ginny Estupinian, Mutual Vision, Millennium, Tognazzini, Vesta Reverse, and Vesta Capital and award Vesta Strategies the following relief:

    (1)    money damages in the amount proximately caused by the conspirators;

    (2)    punitive damages;

    (3)    reasonable attorneys' fees and costs; and

    (4)    such further or different relief as this Court deems appropriate.

### COUNT VIII – CONSTRUCTIVE TRUST
### Against All Defendants

129.    Vesta Strategies incorporates the allegations of paragraphs 1 through 128 above as if fully set forth in this paragraph.

130.    As alleged above, each of the defendants wrongfully acquired or obtained money from Vesta Strategies under circumstances in which, in equity and good conscience, they should not be allowed to keep. Each of the defendants still has Vesta Strategies' money and they are not entitled to it.

131.    Vesta Strategies has a right to its money and any property purchased with its money. Vesta Strategies' right to its money is superior to the right of any defendant.

132.    A constructive trust should be entered to convey the value of the money that each defendant wrongfully received because it rightly and justly belongs to Vesta Strategies, and each of the defendants only gained the use of Vesta Strategies' money through theft, abuse of fiduciary duties, and fraud.

WHEREFORE, Vesta Strategies respectfully request that this Court enter judgment on Count VIII in its favor and against all of the defendants, and award Vesta Strategies the following relief:

    (1)    impose a constructive trust on all monies held by each defendant that rightfully belongs to Vesta Strategies;

    (2)    reasonable attorneys' fees and costs; and

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

(3)    such further or different relief as this Court deems appropriate.

## COUNT IX – UNJUST ENRICHMENT
### Against All Defendants

133.    Vesta Strategies incorporates the allegations of paragraphs 1 through 132 above as if fully set forth in this paragraph.

134.    As alleged above, each of the defendants received a benefit from the monies taken from Vesta Strategies.  Each defendant has retained that benefit and was therefore unjustly enriched at the direct expense of Vesta Strategies.

135.    It would be unjust for each of the defendants to retain that benefit at the expense of Vesta Strategies.

WHEREFORE, Vesta Strategies respectfully requests that this Court enter judgment on Count IX  its favor and against all of the defendants, and award Vesta Strategies the following relief:

(1)    money damages in the amount that each defendant was unjustly enriched at the expense of Vesta Strategies;

(2)    punitive damages;

(3)    reasonable attorneys' fees and costs; and

(4)    such further or different relief as this Court deems appropriate.

## COUNT X – ACCOUNTING
### Against All Defendants

136.    Vesta Strategies incorporates the allegations of paragraphs 1 through 135 above as if fully set forth in this paragraph.

137.    As alleged above, defendants have stolen, misappropriated, and misused Vesta Strategies' money for years.  Vesta Strategies has traced much of that money to Robert Estupinian, his wife, his parents, his friends, his business associates, and his personal companies. However, due to the defendants' numerous breaches of their fiduciary and other legal duties owed to Vesta Strategies, Vesta Strategies does not have complete information as to the extent, nature, causes, and beneficiaries of the monies taken from Vesta Strategies.  Vesta Strategies is entitled to a full and complete accounting at the expense of the defendants to determine what exactly

1    happened to Vesta Strategies' money and who exactly benefited (and in what amounts) from that

2    theft.

3         WHEREFORE, Vesta Strategies respectfully requests that this Court enter judgment on

4    Count X in its favor and against all of the defendants, and award Vesta Strategies the following

5    relief:

6            (1)     money damages in an amount to make Vesta Strategies whole;

7            (2)     a full and complete accounting at the defendants' expense;

8            (3)     reasonable attorneys' fees and costs; and

9            (4)     such further or different relief as this Court deems appropriate.

10   Dated: December __, 2007           Respectfully submitted,

11                                  McDERMOTT WILL & EMERY LLP

12                                  DANIEL E. ALBERTI

13

14                                By:_____

15                                    Daniel E. Alberti
                                    Attorneys for Plaintiff
                                    VESTA STRATEGIES, LLC

16   MPK 136383-1.029407.0020

17

18

19

20

21

22

23

24

25

26

27

28

*(left margin, vertical)* McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO