DANIEL E. ALBERTI (68620)
dalberti@mwe.com
McDERMOTT WILL & EMERY LLP
3150 Porter Drive
Palo Alto, CA  94304-1212
Telephone:     650.813.5000
Facsimile:     650.813.5100

PAUL E. CHRONIS
pchronis@mwe.com
McDERMOTT WILL & EMERY LLP
ARON J. FRAKES
ajfrakes@mwe.com
227 West Monroe Street
Chicago, Illinois   60606
Telephone: 312.372.2000
Facsimile: 312.984.7700

Attorneys for Plaintiff
VESTA STRATEGIES, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VESTA STRATEGIES, LLC,<br><br>Plaintiff,<br><br>v.<br><br>ROBERT E. ESTUPINIAN, GINNY ESTUPINIAN, MUTUAL VISION, LLC, MILLENNIUM REALTY GROUP, VESTA REVERSE 100, LLC, VESTA CAPITAL ADVISORS, LLC, and CAROL-ANN TOGNAZZINI,<br><br>Defendants. | CASE NO.  C 07-06216 JW RS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF VESTA STRATEGIES, LLC'S EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT** |

## I. **INTRODUCTION AND SUMMARY OF REQUESTED RELIEF**

Immediately after learning that Plaintiff, Vesta Strategies, LLC ("Vesta"), had discovered their multi-million dollar fraud and was going to sue them, Defendants Robert and Ginny Estupinian (the "Estupinians") returned – empty – the two Vesta computers on which they conducted their Vesta business. Even though they have now lawyered up, the Estupinians threaten to continue to tamper with Vesta's property and to further spoliate evidence. Indeed, the following facts are undisputed and indisputable:

- On December 3, 2007, Vesta met with the Estupinians, terminated the Estupinians' employment with Vesta, and advised the Estupinians that Vesta was going to file this lawsuit against them due to their embezzlement of millions of dollars of Vesta's money.

- The next day, December 4, 2007, Robert Estupinian returned two of Vesta's computers to Vesta, but both Vesta computers mysteriously had brand new hard drives and, therefore, no files or data.

- The Estupinians have admitted that they removed Vesta's hard drives from Vesta's computers.

- Vesta promptly demanded that the Estupinians preserve the Vesta hard drives and immediately return the improperly removed hard drives to Vesta.

- The Estupinians have not returned the hard drives to Vesta; instead, they have threatened to unilaterally delete or destroy data (or further delete or destroy data) from the hard drives and to only give Vesta a "redacted" image of the hard drives.

- The Estupinians and their attorney have threatened to do this on Friday, December 14, 2007.

Thus, there is an immediate threat that the Estupinians already have and/or imminently will delete, destroy, or modify evidence in this case. That cannot be allowed to happen. Vesta has therefore filed an ex parte motion for a temporary restraining order pursuant to Federal Rule of Civil Procedure 65 and Local Rule 65-1. To prevent this imminent and irreparable harm, Vesta respectfully requests the following immediate relief:

(A)  Entry of a temporary restraining order prohibiting the Estupinians from transferring, altering, modifying, copying, destroying, or tampering with any data on Vesta's computer hard drives;

(B)  Entry of an injunction requiring the Estupinians to immediately return Vesta's hard drives;

(C)  Entry of an order requiring the Estupinians to appear, within 5 days, for a deposition to testify about what they did to Vesta's computers;

(D)  Entry of an order for the Estupinians to show cause why they and anyone acting in concert with them (including anyone who purports to authorize them to delete information from the Vesta hard drives) should not be sanctioned for their roles in tampering with and converting Vesta's computers;

(E)  Award Vesta all of its attorneys' fees and costs in connection with obtaining the return of Vesta's property; and

(F)  Such other or further relief as the Court deems just and appropriate.

In addition, in conjunction with its request for a temporary restraining order, Vesta respectfully requests leave to file a Second Amended Complaint. Vesta's Second Amended Complaint makes only two changes to the prior complaint: (1) it adds allegations concerning the Estupinians' conversion of Vesta's computer hard drives and data, and (2) it adds two new defendants who received and accepted monies that were misappropriated from Vesta. Vesta's proposed Second Amended Complaint ("SAC") is attached as Exhibit A to Vesta's Motion.

## II.  STATEMENT OF FACTS

Robert Estupinian is the former CEO of Vesta. SAC ¶ 1. Ginny Estupinian is Robert Estupinian's wife and is a former employee of Vesta. SAC ¶ 10. As alleged in its complaint, Vesta recently learned that the Estupinians have habitually and systematically misappropriated millions of dollars of Vesta's funds for their own personal purposes, including the purchase of two dogs for $50,000. SAC ¶¶ 1, 18-74.

### A.  The Estupinians Tampered with Vesta's Computers and Wrongfully Took Vesta's Hard Drives.

Eleven days ago, on December 3, 2007, Vesta met with the Estupinians at Vesta's office. Declaration of Paul E. Chronis in Support Of Plaintiff Vesta Strategies, LLC's Ex Parte Motion for a Temporary Restraining Order and Motion for Leave to File a Second Amended Complaint

PLTF.'S MEMO. OF POINTS & AUTH. ISO EX
PARTE MTN FOR TRO & MTN FOR LEAVE TO       - 2 -       CASE NO. C 07-06216 JW RS
FILE 2ND AMENDED COMPLAINT

("Chronis Decl."), ¶ 4; Declaration of Peter Ye in Support Of Plaintiff Vesta Strategies, LLC's Ex Parte Motion for a Temporary Restraining Order and Motion for Leave to File a Second Amended Complaint ("Ye Decl."), ¶ 4. . At that meeting, Vesta (i) informed the Estupinians that Vesta had recently learned about the Estupinians' wrongdoing, (ii) terminated the employment of Robert and Ginny Estupinian, (iii) demanded that the Estupinians return all of Vesta's property to Vesta, including Vesta's computers; and (iv) advised the Estupinians that Vesta planned to sue them. Chronis Decl. ¶ 4; Ye Decl. ¶ 4.

The next day, December 4, 2007, the Estupinians returned two of Vesta's desktop computers to Vesta. Ye Decl. ¶ 5. However, **both** computers, which contained Vesta information and were the tracks in the snow of the Estupinians' acts, were completely empty. *Id.* That is, the Estupinians had installed brand new hard drives and operating systems on both of Vesta's computers. *Id.* Incredibly, neither Vesta computer contained any files or data. *Id.* Simply put, after learning of this lawsuit, the Estupinians improperly removed the hard drives from not one, but two Vesta computers and returned Vesta's computers with nothing on them.

### B. Vesta Repeatedly Demanded that the Estupinians Not Further Tamper with Vesta's Computers and Return the Vesta Hard Drives; the Estupinians Wrongfully Refused.

Shortly after learning that the Estupinians had removed Vesta's hard drives, Vesta demanded, in writing, that the Estupinians return Vesta's hard drives and not further tamper with or alter Vesta's computers. *See* Chronis Decl, Ex. A (12/10/07 Letter from P. Chronis to K. Martin). Two days later, not having heard anything in response, Vesta's counsel asked the Estupinians' counsel what he had done to secure the hard drives that the Estupinians took from Vesta's computers. *See* Chronis Decl., Ex. B (12/12/07 11:04 a.m. E-mail from P. Chronis to K. Martin).

The Estupinians' response was extremely troubling, and telling. On Wednesday, December 12, 2007, the Estupinians' attorney admitted that the Estupinians had Vesta's hard drives. Chronis Decl., Ex. B. However, the Estupinians' attorney did not immediately take possession of the hard drives as he should have. Instead, he asserted that Robert Estupinian was

1  not bringing the hard drives to his attorney for several more days (not until Friday, December 14,
2  2007). *Id.* The Estupinians' attorney did not explain this unwarranted delay.

3  As for the "explanation" of why the Estupinians had removed Vesta's hard drives, the bounds of credulity were well exceeded. The Estupinians apparent (and beyond incredible) story to their attorney was that ***both*** of two separate and independent hard drives "had been failing," and that is why they removed them after being informed that Vesta was going to sue them for millions of dollars of embezzled funds. *Id.* So, as the Estupinians would tell it, confronted with their fraud, the Estupinians (who were no longer employed by Vesta) chose to focus their time and energy on fixing two of Vesta's hard drives that had, in the past, allegedly "been failing." This absurd story should not be relied on by anyone when it comes to the prevention of the removal, obstruction, and tampering with evidence. But this absurd story was embraced without hesitation by the Estupinians' attorney, Kevin Martin, who has refused to preserve Vesta's hard drives as they are and return them.

14  Vesta then wrote that it would arrange for a messenger to pick the hard drives up from the Estupinians' attorney. Chronis Decl., Ex. B (12/12/07 11:44 a.m. E-mail from P. Chronis to K). Martin). The Estupinians' response was again extremely troubling. Now, the Estupinians' attorney stated that he intended "to have the drives copied before turning them over to Vesta" and that there was "some personal information etc. that needs to be redacted." Chronis Decl., Ex. B (12/12/07 1:57 p.m. E-mail from K. Martin to P. Chronis).

20  Vesta responded by again advising the Estupinians, in writing, that (i) the computers and hard drives were Vesta's property, not the Estupinians' property, (ii) the Estupinians had converted that property without Vesta's authorization, and (iii) neither the Estupinians, their attorney, nor anyone acting at their direction were to do anything with Vesta's hard drives except preserve them, exactly as they are, and make them available for Vesta to immediately pick up. Chronis Decl., Ex. B, (12/12/07 8:11 p.m. E-mail from P. Chronis to K. Martin). Vesta's counsel expressly stated that, if the Estupinians would not agree to comply, then Vesta would be forced to file an emergency motion with the Court. *Id.*

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1       Unfortunately, that is exactly what has happened.  The Estupinians still refused to comply.
2 They instead provided yet another extremely troubling response.  This time, without any
3 supporting authority, the Estupinians' attorney claimed that he had a "right to" copy the hard
4 drives and that he intended to do so.  Chronis Decl, Ex. B (12/13/07 12:16 p.m. E-mail from K.
5 Martin to P. Chronis).  He then suggested that Vesta could get a "mirror" of the hard drives after
6 the Estupinians unilaterally deleted (or "redacted") whatever they in their sole discretion
7 considered to be personal private information on the hard drives.  *Id*.  He suggested that this
8 would all occur on Friday, December 14, 2007, when Robert Estupinian was done with whatever
9 he has been doing for days and finally got around to delivering the hard drives to his attorney.  *Id.*
10 Vesta responded with a detailed e-mail yet again explaining why the Estupinians had no right to
11 further tamper with or alter Vesta's property and yet again requesting that the hard drives be
12 immediately made available for pickup by Vesta.  Chronis Decl., Ex. B (12/13/07 2:55 p.m. E-
13 mail from P. Chronis to K. Martin).

      **C.**      <u>**There Is an Imminent Threat of Irreparable Harm.**</u>

15       Thus, immediately after learning of this dispute, the Estupinians tampered with Vesta's
16 computers by removing two hard drives and returning empty computers to Vesta.  The
17 Estupinians admit that they removed the hard drives and that they still have them.  Vesta did not
18 authorize the Estupinians to tamper with, remove, and keep possession of Vesta's computer hard
19 drives.  Vesta did not authorize the Estupinians to obstruct the discovery and fact gathering
20 process by their misdeeds.  Despite Vesta's diligent and repeated demands that they immediately
21 return the hard drives, the Estupinians have failed to do so.  These facts are indisputable.

22       Now, the Estupinians threaten to delete and destroy – or further delete and destroy –
23 potential evidence from the hard drives.  They threaten to unilaterally and without Court
24 supervision "redact" (*i.e.*, delete) information from Vesta's computer hard drives.  They threaten
25 to copy Vesta's computer hard drives, which they have no right to do.  They threaten to only give
26 Vesta an image of the computer hard drives, rather than the hard drives themselves, only after
27 they delete information that they unilaterally determine to be personal.  They threaten to do this
28 today or in the immediate future.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

### III. VESTA IS ENTITLED TO INJUNCTIVE RELIEF

A plaintiff seeking a temporary restraining order or a preliminary injunction must establish "either (1) a combination of probable success on the merits and the possibility of irreparable harm, or (2) that serious questions are raised as to the merits and that the balance of hardships tips in its favor." *Dep't of Parks & Rec. v. Bazaar Del Mundo, Inc.*, 448 F.3d 1118, 1123 (9th Cir. 2006). These alternatives usually represent ends of a continuum along which the greater the relative hardship to the moving party, the less probability of success must be shown. *Benda v. Grand Lodge of the Int'l Ass'n of Machinists*, 584 F.2d 308, 315 (9th Cir. 1978).

Here, Vesta has both (A) a high likelihood of success on the merits of its proposed conversion claim with respect to its computer equipment and the data thereon, and (B) unquestionable irreparable harm if the Estupinians are not prohibited from further tampering with Vesta's computers and ordered to immediately return Vesta's property. Further, the balance of hardships tips entirely in Vesta's favor. Indeed, not further tampering with Vesta's computers and making them available to be picked up by Vesta is no hardship to the Estupinians; in stark contrast, Vesta will suffer severe prejudice if the requested relief is not granted.

#### A. Vesta Has A Strong Likelihood of Success On The Merits Of Its Proposed Conversion Claim.

Conversion is the wrongful exercise of dominion over the property of another. *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451 (1997). The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Id.* Each of these elements is easily met here.

##### 1. The Computers and Hard Drives Are Vesta's Property

There is no dispute that Vesta is the owner of the desktop computers that the Estupinians were permitted to use at their residence while they were Vesta employees. Ye Decl. ¶ 5. The Estupinians conceded this by returning the computers (more accurately, the shell of the computers) to Vesta the day after they were fired. Ye Decl. ¶ 4. Counsel for the Estupinians has

also conceded this. *See* Chronis Decl., Ex. B. The first element of a conversion claim will therefore unquestionably be met.

### 2. The Estupinians Wrongfully Tampered With Vesta's Computers and Took Vesta's Hard Drives Without Permission.

There can also be no dispute that the Estupinians wrongfully tampered with Vesta's computers and took Vesta's hard drives without Vesta's authorization. Vesta fired the Estupinians in person on December 3, 2007. Chronis Decl. ¶ 4; Ye Decl. ¶ 4. The next day, on December 4, 2007, Robert Estupinian returned the desktop computers to Vesta. Ye Decl. ¶ 5. However, before doing so, the Estupinians (or somebody acting on their behalf) ***removed both hard drives in those computers and replaced them with blank drives***. *Id.*. The computers returned to Vesta had new hard drives and no data. *Id.* Vesta's computers have therefore been tampered with and altered, without Vesta's permission. The Estupinians admit that they removed the hard drives and that both of Vesta's hard drives are still in their possession. *See* Chronis Decl., Ex. B. Vesta's hard drives have therefore been wrongfully taken, without Vesta's permission.

Vesta has repeatedly demanded, orally and in writing, that the Estupinians immediately return the hard drives without copying, altering, or deleting any data. Chronis Decl. ¶¶ 5, 6, 8 & Ex. B. Despite these repeated demands, the Estupinians and their lawyer have steadfastly refused. Chronis Decl. ¶¶ 6, 9 & Ex. B.

Thus, the Estupinians have already converted Vesta property in at least two separate and distinct ways: (1) tampering with and altering Vesta's computers by taking out the hard drives and installing a new operating system, and (2) taking Vesta's hard drives and the data thereon and refusing to immediately return that property to Vesta. The second element for a conversion claim will therefore also be easily established.

### 3. The Estupinians' Conversion of Vesta's Property Has Obviously Caused Vesta Damages.

There can also be no dispute that these conversions by the Estupinians has already caused, and will continue to cause, damages to Vesta. As just a few examples, Vesta has been damaged while the Estupinians have kept Vesta's hard drives during the last two weeks as follows:

- Vesta has been unable to review those two Vesta hard drives for additional evidence of where the Estupinians have hid Vesta assets, which has given the Estupinians time to dissipate those assets, and prevented Vesta from protecting its assets;

- Vesta has been unable to review those two hard drives for evidence of the Estupinians' various additional wrongdoings in embezzling Vesta's money and otherwise engaging in improper conduct which substantially, negatively, and immediately impacts Vesta's business;

- Vesta cannot evaluate the status of its important client relationships and whether the Estupinians made any deals involving Vesta that cause Vesta to owe or be owed money;

- Vesta has had to spend substantial resources to recover its converted property instead of focusing its resources on remediating the damage the Estupinians caused to Vesta's business;

- To the extent that any data has already been deleted off of the hard drives, Vesta has been irreparably damaged due to a loss of evidence; and

- To the extent that the Estupinians' lawyer has made good on his intent to delete data from Vesta's hard drives, Vesta has been irreparably damaged due to a loss of evidence.

Thus, the third element will also be easily met.

### B. Vesta Will Be Irreparably Harmed Without Immediate Injunctive Relief.

This is spoliation of evidence, pure and simple. Vesta has filed a serious and detailed complaint against the Estupinians, including counts for RICO violations, conversion of millions of dollars of Vesta's funds, egregious breaches of fiduciary duties, fraud, and other claims. *See generally* SAC. Vesta's complaint is based on the fact that, unbeknownst to Vesta, the Estupinians had been embezzling millions of dollars from Vesta to, among other things, fund their lavish personal lifestyle. *Id.* Vesta specifically alleges that the Estupinians took active and affirmative steps to prevent their wrongdoing from being discovered. *See, e.g.*, SAC ¶ 2.

The Estupinians' first act upon learning that they had been caught was to remove the hard drives from *two* Vesta computers that, for whatever reasons, the Estupinians had chosen to use at their home. They did that within a day of learning about this lawsuit. Chronis Decl. ¶ 4; Ye Decl. ¶ 4. Despite Vesta's best efforts, they have now had those two hard drives for over a week and a half. At this point, only they know what they have already done to Vesta's hard drives. Vesta and the Court need to know what the Estupinians have done. The only ways to know that are (1) for the actual, physical hard drives to be immediately returned to Vesta so that they can be forensically analyzed, and (2) for the Estupinians to be immediately deposed on this issue. Vesta will continue to be irreparably harmed each day that the computer hard drives remain in the Estupinians' hands rather than Vesta's hands.

Further, the Estupinians now expressly threaten to further tamper with Vesta's property in three separate ways. First, and most startlingly, the Estupinians' attorney has stated in writing that the Estupinians intend to delete (or "redact") from the hard drives whatever they unilaterally determine to be "personal information." *See* Chronis Decl., Ex. B. Second, the Estupinians' attorney has stated in writing that the Estupinians intend to copy all of the data on the hard drives – data that undeniably belongs to Vesta and that may be highly confidential or proprietary. *Id*. Finally, despite admitting that the hard drives are Vesta's property, the Estupinians have also remarkably suggested that Vesta would only get a "mirror" of the hard drives rather than the actual hard drives themselves. *Id.*

The Estupinians cannot be allowed to further tamper with and spoliate evidence. What they unilaterally deem to be "personal information" may very well be evidence relevant to their embezzlement of Vesta funds for their own personal purposes. That is not their unilateral decision to make. It is certainly not their decision to make when they are threatening to "redact" that information off of a computer hard drive. Thus, Vesta will be further irreparably harmed if the Court does not order the Estupinians to immediately return Vesta's computer hard drives without further tampering or copying.

### C.  The Balance Of Harm Tips Sharply In Vesta's Favor.

The balancing of harm in this case is not close. The requested relief would cause no harm to the Estupinians; the denial of immediate injunctive relief will cause severe and irreparable harm to Vesta (as discussed in the prior section).

The computer hard drives are Vesta's property. There is no dispute about that. Merely returning what is not theirs in the first place cannot possibly harm the Estupinians.

The only purported reasons that the Estupinians have given for their egregious conduct are (1) they have the "right" to copy the hard drives because this litigation is pending, and (2) they need to "redact" (*i.e.*, delete off a computer that is not the Estupinians) information that the Estupinians deem to be "personal information." These assertions, which were not supported by any authority whatsoever, are utterly without merit.

First, the Estupinians do not have any "right" to copy all of Vesta's data and information, including confidential information. What the Estupinians can do is serve appropriate discovery requests under the Federal Rules of Civil Procedure asking for production of relevant, non-privileged information from these hard drives. What the Estupinians cannot do is simply end-run the Federal Rules of Civil Procedure by unilaterally and unlawfully converting Vesta's property.

Second, even if there is "personal information" on the converted hard drives, the Estupinians do not have a right to make unilateral decisions about what should be deleted from hard drives that are evidence in this case. These two computers are not, and have never been, the Estupinians' property. That the Estupinians chose to put so-called "personal information" on their employer's computers is irrelevant to whether they have to give the hard drives back. They do. Simply put, the Estupinians have no right to further tamper with Vesta's property or to retain Vesta's property merely because they chose to put alleged personal information on it.

In sum, the Estupinians are already legally obligated to fully preserve and return Vesta's computer hard drives. An order enforcing their legal obligations does not harm them. In stark contrast, as explained previously, Vesta will suffer severe and irreparable harm if the Estupinians are not ordered to fully preserve and return the hard drives. As a result, the balance of harms weighs entirely in Vesta's favor.

## IV. VESTA SHOULD BE AWARDED SANCTIONS AS A RESULT OF THE DEFENDANTS' WRONGFUL CONDUCT.

District courts have broad discretion to impose sanctions as part of their inherent power "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, *reh'g denied*, 501 U.S. 1269 (1991). The district court may use its inherent power to "punish those who alter or destroy evidence." *Graham v. Teledyne-Continental Motors*, 805 F.2d 1386, 1390 n.9 (9th Cir. 1986). Sanctions may include monetary sanctions, including all fees and costs expended by a party in bringing a motion challenging an adverse party's spoliation of evidence. *Padgett v. City of Monte Sereno*, No. C 04-03946 JW, 2007 U.S. Dist. LEXIS 24301, at *11-12 (N.D. Cal. March 20, 2007).

"Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, <u>or potential litigation</u>." *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987) (emphasis added) (quoting *Wm. T. Thompson Co. v. General Nutrition Corp.*, 593 F. Supp. 1443, 1455 (C.D. Cal. 1984)). "<u>As soon as a potential claim is identified</u>, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *Toste v. Lewis Controls, Inc.*, No. C-95-01366-MHP, 1996 U.S. Dist. LEXIS 2359, at 8 (N.D. Cal. February 27, 1996) (emphasis added). When a party despoils potentially relevant evidence, the trial court need not make a finding of bad faith before imposing corrective sanctions. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993).

Here, there can be no dispute that the Estupinians were on notice of this litigation when they tampered with and converted potential evidence in this case. There also can be no dispute that they have threatened to delete and destroy potential evidence from these converted hard drives. The Estupinians' egregious conduct in this case required immediate action by Vesta and warrants an award to Vesta of its fees and costs in having to bring this motion and conduct depositions of the Estupinians to determine what they did to Vesta's computers and the data stored on them.

| PLTF.'S MEMO. OF POINTS & AUTH. ISO EX PARTE MTN FOR TRO & MTN FOR LEAVE TO FILE 2ND AMENDED COMPLAINT | - 11 - | CASE NO. C 07-06216 JW RS |

## V. THIS IS AN APPROPRIATE CASE FOR THE COURT TO WAIVE THE BOND REQUIREMENT.

The Ninth Circuit has held that Rule 65(c) of the Federal Rules of Civil Procedure invests the district court "with discretion as to the amount of security required, if any." *Jorgensen v. Cassiday*, 320 F.3d 906, 920 (9th Cir. 2003) (internal quotations and citations omitted). The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct. *Id.* Moreover, when the balance of the potential harms each party will suffer as a result of a preliminary injunction "weighs overwhelmingly in favor of the party seeking the injunction," a district court may waive the bond requirement." *Elliott v. Kiesewetter*, 98 F.3d 47, 60 (3rd Cir. 1996).

Because Plaintiff is likely to prevail on the merits in this matter, because there is no likelihood of harm to the Estupinians, and because the balance of hardships overwhelmingly favors Plaintiff, Plaintiff respectfully requests that the Court waive a bond requirement in this case.

## VI. VESTA'S MOTION TO FILE ITS SECOND AMENDED COMPLAINT SHOULD BE GRANTED.

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading by leave of court. The rule states that "leave shall be freely given when justice so requires." FED. R. CIV. P. 15(a). The Supreme Court has long recognized the liberal standard that this rule accords parties who seek in good faith to amend their pleadings: "In the absence of any apparent or declared reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc., the leave sought to amend a complaint should, as the rules require, be 'freely given'." *Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962) ("Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded.").

"Several factors govern the granting of a motion to amend: (1) undue delay, (2) bad faith, (3) prejudice to the nonmovant, and (4) futility of amendment." *Senza-Gel Corp. v. Seiffhart*, 803

1  F.2d 661,666 (Fed. Cir. 1986) (citing *Loehr v. Ventura County Community Coll. Dist.*, 743 F.2d
2  1310, 1319 (9th Cir. 1984)). "The single most important factor is whether prejudice would result
3  to the nonmovant." *Id.* "[T]he *nonmovant* bears the burden of showing why amendment should
4  not be granted." *Id.* (emphasis added).

5  Here, there has been no undue delay or prejudice to defendants, as this case is only one
6  week old. Vesta's proposed Second Amended Complaint is brought in good faith based on the
7  information recently uncovered regarding the Estupinians' further conversion of Vesta's property
8  and Vesta's good faith belief that Robert Estupinian's parents received and accepted monies that
9  were misappropriated from Vesta. Chronis Decl. ¶ 10. Vesta therefore requests leave of Court to
10 file the Second Amended Complaint attached hereto as Exhibit A.

## VII.  CONCLUSION

For the reasons set forth above, Vesta respectfully requests that the Court grant Vesta's *Ex Parte* Motion for a Temporary Restraining Order and Motion for Leave to File a Second Amended Complaint.

Dated: December 14, 2007              Respectfully submitted,

                                      McDERMOTT WILL & EMERY LLP
                                      DANIEL E. ALBERTI


                                      By:       /s/ Daniel E. Alberti
                                          Daniel E. Alberti

                                      Attorneys for Plaintiff
                                      VESTA STRATEGIES, LLC

MPK 136369-2.029407.0020

---

PLTF.'S MEMO. OF POINTS & AUTH. ISO EX PARTE MTN FOR TRO & MTN FOR LEAVE TO FILE 2ND AMENDED COMPLAINT    - 13 -    CASE NO. C 07-06216 JW RS