Kevin R. Martin, SBN 176853
**RANDICK O'DEA & TOOLIATOS, LLP**
5000 Hopyard Road, Suite 400
Pleasanton, California  94588
Telephone:    (925) 460-3700
Facsimile:    (925) 460-0969

Attorneys for Defendants ROBERT E. ESTUPINIAN,
GINNY ESTUPINIAN, and MUTUAL VISION, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| VESTA STRATEGIES, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>ROBERT E. ESTUPINIAN, GINNY ESTUPINIAN, MUTUAL VISION, LLC, MILLENNIUM REALTY GROUP, VESTA REVERSE 100, LLC, VESTA CAPITAL ADVISORS, LLC, and CAROL-ANN TOGNAZZINI,<br><br>Defendants. | Case No.:  C 07-06216 JW RS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER**<br><br>Date:         December 18, 2007<br>Time:         10:00 a.m.<br>Courtroom:  8 |

Defendants Robert E. Estupinian, Ginny Estupinian and Mutual Vision, LLC ("Estupinian Defendants") hereby submit this Memorandum of Points and Authorities in Opposition to Plaintiff Vesta Strategies, LLC ("Vesta")'s Ex Parte Motion for a Temporary Restraining Order.

## I.    INTRODUCTION

Defendants Robert and Ginny Estupinian, through their ownership of Mutual Vision, LLC, are 49% owners of plaintiff Vesta. Consequently, they have an ownership interest in Vesta and its property, including the subject disk drives. This is an important fact that is conspicuously

1

missing in all of Plaintiff's pleadings before the Court. Although the Estupinian Defendants have not yet had an opportunity to respond to Vesta's complaint and file their anticipated cross-complaint, they adamantly deny the outrageous claims alleged by Vesta's other owner John D. Terzakis, in this action. This is not a case of embezzlement by rogue employees, but rather a business partnership gone bad. The fact is that Mr. Terzakis has launched a smear campaign against his business partners, including parading his complaint of lies around the Vesta office, all in effort to intimidate the Estupinians into paying him money. As this case works its way through the litigation process, the evidence will show and the Court will come to see that things are radically different than alleged by Plaintiff.

As for the instant motion, Vesta seeks a temporary restraining order to force the turnover of two old hard drives which had previously been used in the Estupinians' home for work they did for Vesta. As will be shown in this Opposition and accompanying documentation, the actions of Plaintiff in bringing this motion are unwarranted, unnecessary, and done simply to harass defendants. Vesta's claims that the defendants have threatened to "unilaterally delete or destroy data" is demonstrably false and intended simply to incite the Court. To the contrary, and despite the fact that the Estupinians have an ownership interest in the hard drives, counsel has made every effort to work with Vesta and its attorney in preserving the data on the hard drives and to have them returned to Vesta, all without success. As a result of Vesta's position on the matter, the Estupinian Defendants hereby seek a protective order or ask the drives be turned over to a discovery referee to ensure that any information on them is properly recorded by an independent third party computer forensic before they are delivered to Vesta.

## II.   FACTUAL BACKGROUND

Robert and Ginny Estupinian (husband and wife) are 100% owners of co-defendant Mutual Vision, LLC. Pursuant to the 2004 Operating Agreement, Mutual Vision, LLC is a 49% percent owner of Plaintiff Vesta Strategies, LLC. [See R.Estupinian Decl., Ex. A ] Prior to this blowup, Ginny was acting President for Vesta, and Robert was Chief Executive Officer. Vesta Strategies, LLC is a Qualified Intermediary for 1031 Exchanges. [R. Estupinian Decl. ¶ 1]

As far back as September 2007, Robert Estupinian began having problems with his home computer. Specifically, the machine would spontaneously turn off without warning. [R. Estupinian Decl. ¶ 2] Ginny Estupinian began experiencing similar issues in October 2007. [*Id.*] Robert Estupinian mentioned the problem in passing to Chanel Hong, the corporate communications manager for Vesta, sometime in October 2007. Emile Bebla, Vesta's IT contractor, even came to the Estupinian household in the late October timeframe to diagnose the problem, but was unable to duplicate the issues. [R. Estupinian Decl. ¶ 3]

On or about December 3, 2007, the other owner of Vesta, John Terzakis, and his attorney Paul Chronis, ambushed Robert and Ginny Estupinian in a meeting which originally was supposed to be a regular business meeting only with Terzakis. [R. Estupinian Decl. ¶ 4] Instead, the Estupinians were surprised by Terzakis and Chronis who proceeded to accuse the two of embezzlement, wire fraud, and other outrageous claims allegedly conducted against the company. At that meeting, Terzakis and Chronis demanded that the Estupinians pay two and half million dollars or else. [*Id.*] Ginny Estupinian refused to listen to the ravings of Mr. Terzakis and Mr. Chronis and left. Robert Estupinian listened for a few more minutes, and thereafter was escorted from the Vesta office by two security officers and required to turn over his key and parking pass. [*Id.*] Neither of the two were given an opportunity to recover any of our personal belongings from the Vesta office. [*Id.*]

Given the erratic history with the computer hard drives, and the fact that they now had been falsely accused of serious misconduct, Robert and Ginny were particularly concerned about loss of data on their computers. [R. Estupinian Decl. ¶ 5] They knew that the content of those hard drives would be critical in defending themselves against Mr. Terzakis' outrageous claims. [*Id.*] As a result, on December 4, 2007, a day after they met with Terzakis and Mr. Chronis, Robert Estupinian arranged for MicroComp, a local computer tech service provider, to remove and preserve the hard drives. [*Id.*] A MicroComp technician came to the Estupinian's residence on December 5, 2007, removed the hard drives, and placed them in static protective packaging.

3

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EX PARTE MOTION FOR A
TEMPORARY RESTRAINING ORDER
CASE NO.: C 07-06216 JW RS
\\Fsprolaw\ProLawDocs\E0302.001\161093.doc

Emil Babla from Vesta then picked up the computers with new hard drives on December 6, 2007. [*Id.*]

The Estupinian Defendants first retained counsel Kevin R. Martin on Monday, December 10, 2007. At that time, neither Mr. Martin nor Robert or Ginny were aware that a lawsuit had been filed. [R. Estupinian Decl. ¶ 6] That same day, Mr. Martin contacted Paul Chronis to discuss the claims made in the December 3 meeting and whether Mr. Terzakis intended to pursue litigation. During that conversation, Mr. Chronis indicated that a complaint had in fact already been filed against Robert, Ginny and Mutual Vision, LLC, [Martin Decl. ¶ 5] and that he intended to file an amended complaint to add Robert Estupinian's parents as defendants. [*Id.*] Mr. Martin requested that Mr. Chronis forward copies of the complaint and any other pleadings for his review. During that same conversation, Mr. Chronis indicated that the two computers Robert and Ginny had been using in their home office had been returned to Vesta, but that the hard drives had been replaced. [Martin Decl. ¶ 5] Mr. Chronis asked counsel to contact the Estupinians to secure return of the old hard drives. [*Id.*]

In late afternoon on Monday, December 10, 2007, Mr. Martin received by email copies of plaintiff Vesta's amended complaint and spoliation letter from Aron Frakes, who is apparently an associate with Mr. Chronis. [Martin Decl. ¶ 6] Following the review of the complaint on Tuesday, Mr. Martin contacted Mr. Frakes asking whether or not the document he had received was the latest complaint, because he understood that Vesta intended to add Mr. Estupinian's parents to the lawsuit, and that had not been done in the version reviewed. [*Id.*] Mr. Chronis had failed to mention during the prior teleconference that Vesta had already filed an amendment to the original Complaint and that his proposed amendment would be a second revision.

Mr. Chronis responded to the email directed to Mr. Frakes, indicating that he intended to file yet another amended pleading. [Martin Decl. ¶ 7] Chronis also asked what had been done to secure the hard drives. [*Id.*] By this time, Mr. Martin had made arrangements with Robert Estupinian to have the old hard drives brought to his office on Friday, December 14, 2007, in connection with a meeting the two had scheduled and informed Mr. Chronis of these events. [*Id.*]

4

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO.: C 07-06216 JW RS
\\Fsprolaw\ProLawDocs\E0302.001\161093.doc

Apparently, this scheduling was not good enough for Mr. Chronis, as he sent another email on the subject in what can only be described as sarcastic and unprofessional prose, challenging the contention that the drives had failed, and informing counsel that he would have a messenger pick up the drives on Friday. [Martin Decl. ¶ 8] Given the apparent animosity between the parties, and the fact that the evidence on the disk drives could prove critical in defending his clients against Mr. Terzakis' claim, Mr. Martin informed Mr. Chronis that it was his intention to have the hard drives copied before turning them over to Vesta. [Martin Decl. ¶ 9] Mr. Martin also informed Chronis that his clients had indicated there may be personal private information on the drives which they would like protected from disclosure to Vesta and in particular Mr. Terzakis. In response to that email, Mr. Chronis wrote back accusing the Estupinians of wiping two Vesta computers clean after they were terminated, and expressing shock at the two day time lag of counsel in retrieving the drives. [Martin Decl. ¶ 10] His characterization of these actions, and impliedly that of counsel, as "intentional obstruction" and "removal" of evidence was completely unfounded and insulting. In effort to resolve the standoff, Mr. Martin emailed Mr. Chronis suggesting that plaintiff designate a computer forensic expert in order to have the drives copied. Mr. Chronis refused the offer at compromise, instead choosing to file this instant motion.

### III.   LEGAL ARGUMENT

**A.   THE ESTUPINIAN DEFENDANTS HAVE PRESERVED THE EVIDENCE.**

The basis of this motion is Plaintiff's claim that by preserving the contents of their home computer hard drives, defendants have somehow "tampered" with evidence. To the contrary, and as evidenced in the declarations of Robert Estupinian and counsel, the Estupinians have taken every precaution *to ensure* that the information on the hard drives is properly preserved. As discussed above, the Estupinians had a professional computer technician remove the hard drives and preserve them in static protective packaging, and then timely forwarded the drives to their attorney for handling. There has been no spoliation of evidence and for this reason alone Plaintiff's motion should be denied.

5

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO.: C 07-06216 JW RS
\\Fsprolaw\ProLawDocs\E0302.001\161093.doc

Given the tenor of the allegations made by their former business partner, it would have been reckless for defendants to hand over the computers and hard drives knowing that the information on the drives could have been damaged the next time the computer was turned on, or worse yet at the hands of Vesta and its management. As noted in the *General Nutrition* case cited by Vesta in its moving papers, the Court possesses an inherent power to sanction litigants for abusive litigation practices that are taken in bad faith. *See* 593 F. Supp. 1443, 1456, citing Roadway Express, Inc. v. Piper, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); Link v. Wabash Railroad Co., 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962); Chism v. National Heritage Life Insurance Co., 637 F.2d 1328 (9th Cir.1981). But those sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, *and destroys such documents and information.* (emphasis added) While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request. Bowmar Instrument Corp. v. Texas Instruments, Inc., 25 Fed.R.Serv.2d 423 (N.D.Ind.1977); In re Agent Orange Product Liability Litigation, 506 F.Supp. 750 (E.D.N.Y.1980). That is exactly what Robert and Ginny Estupinian have done in this situation. Preserve the evidence.

**B.   EVEN IF DEFENDANTS' ACTIONS CONSTITUTE A DISCOVERY VIOLATION, THERE HAS BEEN NO DAMAGE TO PLAINTIFF.**

If the Court concludes, however, that the Estupinians' actions in preserving the information (information which they demonstrably have an ownership interest in) on the drives constitutes a discovery violation, then defendants contend that there has been no damage suffered by Plaintiff. Spoliation of evidence occurs when a party (1) destroys evidence after receiving "some notice" that the evidence was potentially relevant to litigation; and, in so doing, (2) impairs the non-spoiling party's ability to go to trial, or threatens to interfere with the rightful

6

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO.: C 07-06216 JW RS
\\Fsprolaw\ProLawDocs\E0302.001\161093.doc

decision of the case. <u>United States ex rel. Wiltec Guam, Inc. v. Kahaluu Constr. Co.</u>, 857 F.2d 600, 604 (9th Cir.1988); <u>United States v. Kitsap Physicians Serv.</u>, 314 F.3d 995, 1001 (9th Cir.2002). Sanctions for spoliation of evidence may be imposed under the court's inherent powers, or alternatively, if the spoliation violates a court order, under Federal Rule of Civil Procedure 37(b). See <u>Unigard Sec. Ins. Co. v. Lakewood Engineering & Mfg. Corp.</u>, 982 F.2d 363, 367-68 (9th Cir.1992). In this case, there has been no harm suffered. Defendants arranged for return of the drives to Plaintiff in a timely manner with reasonable request that counsel be allowed to mirror the information so as to preserve it. No evidence has been destroyed, and Plaintiff's ability to go to trial has not been impaired. All tolled, three days passed from the time counsel was informed that an action had been filed to when counsel – an officer of the court- took possession of the drives. The drives are intact and contain whatever information they did on or about December 4, 2007 when they were professionally removed from the Estupinians' home computers. Plaintiffs have suffered no harm.

As for the remaining issues of their TRO, Robert Estupinian has submitted sworn declaration explaining the chain of events leading up to the delivery of the drives to his attorney. Consequently, no deposition on the issue is warranted.

**C.  THE SUBJECT DRIVES SHOULD BE SUBMITTED TO DISCOVERY REFEREE, OR MADE SUBJECT TO AN APPROPRIATE PROTECTIVE ORDER.**

In order to properly preserve the information on the drives, Defendants request that the drives be submitted to a discovery referee with terms for disclosure, or subject to an appropriate protective order. One of the principal concerns of Defendants is that the drives contain personal private information that is not discoverable by Plaintiffs. Information such has personal contact information, phone numbers, and financial information is privileged information and not subject to discovery by Plaintiff.

7

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO.: C 07-06216 JW RS
\\Fsprolaw\ProLawDocs\E0302.001\161093.doc

D. **DEFENDANTS SHOULD BE AWARDED ATTORNEY'S FEES AND COSTS DEFENDING THIS FRIVILOUS MOTION.**

Defendants should be awarded their fees and costs spent defending this frivolous motion.

### IV.   CONCLUSION

Based on the foregoing, Plaintiff's Motion for should be denied and the disk drives ordered produced subject to protective order or under administration of discovery referee.

Date:   December 17, 2007

RANDICK O'DEA & TOOLJATOS, LLP

By: _____
Kevin R. Martin

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO EX PARTE MOTION FOR A TEMPORARY RESTRAINING ORDER
CASE NO.: C 07-06216 JW RS
\\Fsprolaw\ProLawDocs\E0302.001\161093.doc

8